[Cite as *State v. Edwards*, 2023-Ohio-2632.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-11-073 |
| | : | O P I N I O N |
| - vs - | | 7/31/2023 |
| | : | |
| LEFON P. EDWARDS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR38080


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Lefon P. Edwards, appeals his conviction in the Warren County Court of Common Pleas after a jury found him guilty of one count of second-degree felony robbery and one count of first-degree misdemeanor petty theft. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2}   On May 24, 2021, the Warren County Grand Jury returned a two-count indictment against Edwards.  The first count charged Edwards with second-degree felony robbery in violation of R.C. 2911.02(A)(2).  The second count charged Edwards with first-degree misdemeanor petty theft in violation of R.C. 2913.02(A)(4).  The charges arose after an investigation conducted by the Springboro Police Department identified Edwards as the perpetrator who robbed the Quality Inn hotel located just off I-75 at 15 Sharts Drive, in Springboro, Warren County, Ohio, on the evening of October 22, 2020.  Edwards was subsequently arraigned, and thereafter released on bond, after entering a not guilty plea to both charges.

*Proceedings on Edwards' Motion in Limine*

{¶ 3}   On January 19, 2022, Edwards filed a motion in limine.  In his motion, Edwards sought an order barring the state from introducing at trial "any voice identification evidence" used by the Springboro Police Department to identify him as the perpetrator of the Quality Inn robbery.  Edwards later supplemented his motion on March 16, 2022.  That same day, approximately 30 minutes after Edwards filed his supplemental motion, the trial court held a hearing on the matter.  During this hearing, the trial court heard testimony from one witness, a then road patrol officer and former detective with the Springboro Police Department, Officer William Clevenger.

{¶ 4}   Officer Clevenger, while serving in his prior role as detective, was assigned to investigate the Quality Inn robbery.  This investigation resulted in a series of leads that pointed Officer Clevenger to Edwards as a potential suspect in the case.  These included Officer Clevenger's discovery that the vehicle the perpetrator used to commit the robbery was registered to Edwards' mother, Tammy.  These leads also included Officer Clevenger discovering Edwards had been convicted of robbing a Holiday Inn located in Boone County,

Kentucky several years earlier, in 2016. Upon so learning, Officer Clevenger contacted the Boone County Sheriff's Department to see what information it had on Edwards. This ultimately resulted in Officer Clevenger obtaining from the Boone County Sheriff's Department an audio recording of a 2016 interview between Edwards and a detective with the Florence Police Department, Detective Michael Dickhaus.[1]

{¶ 5} After obtaining this audio recording, Officer Clevenger contacted several agencies requesting a voice comparison between Edwards' voice heard on that 2016 recording and the perpetrator's voice captured on the surveillance footage taken of the 2020 robbery of the Quality Inn. This eventually led Officer Clevenger to meet with Detective Dickhaus at the Springboro Police Department to review that surveillance footage. Describing how this meeting came to be, Officer Clevenger testified:

> I advised [his agency] that I would like to speak with Detective Dickhaus. I learned that he was on a special assignment. They were provided my cell phone number and asked—to request him to contact me.
>
> He contacted me. I explained to him that I was working a case up here and that I would like to meet with him to see if he could identify the audio and/or video of the suspect from my case.
>
> I said I did not want to hamper the investigation any further. I didn't want to go into any more details about it. I just wanted to see if he would meet with me and view this video.
>
> He informed me that he could come up to Springboro PD the following day. Out of courtesy, it was my case, I would have met him anywhere to do that, but he said it was okay. He was on special assignment. He could come up to Springboro PD. So he did that the next day.

{¶ 6} Following this testimony, Officer Clevenger was then asked if he had provided Detective Dickhaus with Edwards' name or otherwise identified Edwards as a potential suspect in the Quality Inn robbery. To this, Officer Clevenger responded, "Absolutely not."

---

1. Florence is a city located within Boone County, Kentucky.

Officer Clevenger also testified, "Not at all," when asked if he had at any point used Edwards' name when discussing the case with Detective Dickhaus. This was in addition to Officer Clevenger testifying:

> Q: Did you—did you ever tell him, hey, my case looks a lot like one of your old cases?
>
> A: No.
>
> Q: Point him towards a specific old case?
>
> A: No.
>
> Q: Hotel robberies, the—the Waffle House robberies, anything like that?
>
> A: No.
>
> Q: Time frame, you said, oh, this looks like a—one of your cases from 2016?
>
> A: No.

{¶ 7} Officer Clevenger testified that he and another officer then played the surveillance footage taken of the Quality Inn robbery for Detective Dickhaus. This footage contained both audio and the video of that robbery. Upon reviewing that footage, Officer Clevenger testified that Detective Dickhaus noted the perpetrator's voice "sounded familiar, but he couldn't put a name to it at that time." Officer Clevenger then provided Detective Dickhaus with a copy of the surveillance footage to take with him. After being provided with that copy, Officer Clevenger testified that Detective Dickhaus told him "that he kept copies of all his old cases, so he was going to review those."

{¶ 8} Shortly thereafter, Detective Dickhaus contacted Officer Clevenger and told him that "he believed with 95 to 98 percent certainty" that the perpetrator's voice captured on the surveillance footage taken of the Quality Inn robbery was that of Edwards. Officer Clevenger testified that Detective Dickhaus made this determination after he conducted "his

- 4 -

own investigation" and "voice comparison" between the perpetrator of the Quality Inn robbery's voice and Edwards' voice heard on the audio recording of the interview Detective Dickhaus conducted with Edwards in 2016.

*The Trial Court's Decision Denying Edwards' Motion in Limine*

{¶ 9} After hearing Detective Clevenger's testimony, and upon receiving further arguments from both Edwards' and the state, the trial court took the matter under advisement. The trial court thereafter issued its decision denying Edwards' motion in limine at a final pretrial hearing held on April 4, 2022. In so holding, the trial court noted that it would allow the state to call Detective Dickhaus as a witness to testify and opine that it was Edward's voice that could be heard on the video surveillance footage taken of the Quality Inn robbery demanding money from the hotel clerk. Specifically, when asked by Edward's trial counsel whether it would allow Detective Dickhaus to identify Edwards' voice at trial, the trial court stated:

> Well, again, I'm—again, to me, that's a question of fact for the jury to determine whether that's a—whatever his prior contact was is a sufficient sample for him to be able to make that connection that this voice he hears on this most recent videotape is that of Mr. Edwards. * * * So the answer to your— short answer to your question is, yes, I'm going to allow that.

{¶ 10} The trial court, however, limited the state to noting just that Detective Dickhaus had prior "contact" with Edwards, thereby avoiding the need to discuss any ancillary "investigations, interviews, interrogations, those type of things," that involved Edwards. The trial court also admonished the state from using "any words that would infer or could be inferred that [Edwards] is or was a suspect in—in another jurisdiction." The trial court noted that it was doing this to "stay away" from any potential problems that could arise by linking Edwards to "something in another jurisdiction" like, as it relates to the facts of this case, his conviction for robbing the Holiday Inn as discussed above.

- 5 -

*The State's Notice of Intent to Use "Other-Acts" Evidence at Trial*

{¶ 11} On August 29, 2022, the state filed a notice setting forth its plan to use certain "other-acts" evidence at trial in accordance with Evid.R. 404(B). This included evidence related to Edwards' aforementioned 2016 conviction for robbing the Holiday Inn hotel. This evidence, according to the state, would be used to identify Edwards as the perpetrator of the Quality Inn robbery given the similarities between that robbery and the way Edwards had robbed the Holiday Inn. To support this contention, the state noted, in pertinent part, the following:

> The description of the [Quality Inn robbery] closely relates to an incident that [Edwards] was charged with in 2016. [Edwards] was indicted and subsequently charged with two counts of Robbery in the Second Degree and one count of Fleeing and Evading in the First Degree. While carrying out the robberies in 2016, [Edwards] entered business with his hands in his pocket demanding the cashier give him the money in the register. Throughout the robbery, [Edwards] never brandished a weapon but implied that he had one by keeping his hands concealed. The modus of the 2016 robberies and the [Quality Inn robbery] are identical in this respect.[2]

{¶ 12} On September 13, 2022, Edwards filed a memorandum requesting the trial court prohibit the state from introducing the requested "other-acts" evidence at trial. The trial court subsequently denied Edwards' request from the bench. In so holding, the trial court stated that, although it did not know "the specific evidence" that the state planned to introduce, it was nevertheless the trial court's understanding that the state was "bringing in evidence of a prior act to show the identity of Mr. Edwards in this instance," which "certainly is permissible under" the rules of evidence, and more specifically, Evid.R. 404(B), "so that's why I'm allowing it to come in." The trial court did note, however, that "it could come out,

---

2. We note that, within its notice filed with the trial court, the state referred to Edwards' involvement in more than one robbery. The record contains very little information about a robbery other than the 2016 robbery of the Holiday Inn hotel discussed above. However, upon review, it appears Edwards was also convicted of robbing a Waffle House restaurant.

turn out that it's not similar in any way," but that it did not yet know "the answer to that at this point in time, but that's my—that was my ruling and that is my ruling."

*The Testimony and Evidence Presented at Trial*

{¶ 13} On September 19, 2022, the trial court held a one-day jury trial on the matter. During the trial, the jury heard testimony from a total of four witnesses. This included testimony from both Officer Clevenger and Detective Dickhaus. Edwards did not himself testify, but did call one witness to testify in his defense. The following is a summary of the relevant testimony and evidence presented at trial.

{¶ 14} On the evening of October 22, 2020, Girish Patel, the part owner and general manager of the Quality Inn, received a frantic telephone call from one of his then employees, Devadharshini Soundararajan, notifying him that the hotel's front desk had just been robbed. Upon hearing this, Patel told Soundararajan to call the police. After getting off the phone with Soundararajan, Patel then remotely accessed the Quality Inn's surveillance footage from his home computer to review the incident and determine what had happened during the robbery. Describing what he saw on that surveillance footage, Patel testified:

> When I accessed that video, the one thing I observed is that somebody came and asked for the money and she don't know what to do so she just—you see the guy saying give the money, it's not worth it, it's not worth it and then finally you see her giving him the money.

However, although the perpetrator can be heard telling Soundararajan that it was "not worth it," there is no dispute that the perpetrator never brandished a weapon before, during, or after Soundararajan handed the money from the hotel's cash register over to him. There is also no dispute that the perpetrator never made any overt threats of physical harm to Soundararajan such as, "I'm going to kill you" or "I'm going to hurt you."

{¶ 15} Officer Clevenger, while serving in his role as a detective with the Springboro Police Department, was assigned to investigate the robbery that occurred at the Quality Inn

on the evening of October 22, 2020. As noted above, Officer Clevenger's investigation resulted in a series of leads that pointed to Edwards, a Black male standing five feet eight inches tall and weighing approximately 155 lbs., as a potential suspect in the robbery. This included Officer Clevenger's own description of the perpetrator as depicted on the hotel's surveillance footage of the robbery, as well as the description of the perpetrator provided to him by hotel's front desk clerk, Soundararajan. Specifically, as Officer Clevenger testified, the perpetrator was a Black male with a "medium build, maybe five/seven to five/nine as compared to the height of the clerk," who stands approximately five feet tall.

{¶ 16} Officer Clevenger's investigation also revealed the vehicle the perpetrator used to commit the robbery was registered to Edward's mother, Tammy, and Officer Clevenger obtaining Edwards' cell phone records. These records placed Edwards in the general vicinity of the Quality Inn a short time both before and after the robbery occurred. This was in addition to Officer Clevenger discovering Edwards' prior conviction that arose from his robbing a Holiday Inn located in Boone County, Kentucky, in 2016. Edwards' immediately objected to this testimony, claiming it was improper "other-acts" evidence that was inadmissible under Evid.R. 404(B). The trial court overruled Edwards' objection and then instructed the jury as follows:

> Ladies and gentlemen of the jury, the testimony you're about to hear is about the commission of acts, other than the offense with which the defendant is charged in this trial. This evidence is received only for the limited purpose of providing the identity of the defendant and/or of what's called modus operandi to determine whether the evidence proves identity.

{¶ 17} Continuing, the trial court stated:

> The evidence about the commission of acts other than the offenses with which the defendant is charged in this trial cannot be considered for any other purposes, other than the purposes identified above. It is not received and you will not consider it to prove the character of the defendant in order to show that he acted in conformity with that character.

{¶ 18} The trial court explained to the jury that this was because:

> It does not follow from the defendant's past acts that he committed the particular crimes currently at trial, beyond a reasonable doubt. The State cannot satisfy its burden merely by implying that the defendant committed these crimes, because his other acts suggest a propensity to commit crimes.

{¶ 19} Following the trial court's instruction, Officer Clevenger testified that he contacted the Boone County Sheriff's Department for information about Edwards' role in the Holiday Inn robbery. This, as noted previously, ultimately resulted in Officer Clevenger receiving from the Boone County Sheriff's Department an audio recording of an interview between Edwards and Detective Dickhaus. Officer Clevenger then testified, just as he did at the hearing on Edwards' motion in limine, to how he eventually met with Detective Dickhaus at the Springboro Police Department. This is in addition to Officer Clevenger testifying to the circumstances under which Detective Dickhaus viewed the surveillance footage taken of the Quality Inn robbery, to the fact that Detective Dickhaus was then provided a copy of that surveillance footage for his review, and that, shortly after their meeting took place, Detective Dickhaus contacting him and providing him with additional information that resulted in Edwards' indictment.

{¶ 20} Detective Dickhaus also testified regarding his meeting with Officer Clevenger at the Springboro Police Department and the events that led him to believe Edwards was the perpetrator of the Quality Inn hotel robbery. This included Detective Dickhaus testifying regarding Edwards' prior 2016 conviction for robbing a Holiday Inn hotel located in Boone County, Kentucky. Before Detective Dickhaus offered that testimony, however, the trial court provided the jury with the same instruction it had recited earlier regarding certain portions of Officer Clevenger's trial testimony. Specifically, the trial court again instructed the jury, in pertinent part, as follows:

Ladies and gentlemen, we have given you this instruction once. I'm going to go ahead and give you this instruction again. The testimony you're about to hear is about the commission of acts other than the offenses with which the defendant is charged in this trial. This evidence is received only for the limited purpose of proving identity and/or modus operandi.

{¶ 21} After the trial court's instruction, Detective Dickhaus was then asked about his involvement in investigating the 2016 Holiday Inn robbery that Edwards was found guilty of committing. This included Detective Dickhaus testifying about the circumstances surrounding that robbery, the way Edwards had committed that robbery, and the interview he had conducted with Edwards during his investigation of that robbery. For instance, as it relates to the mannerisms Edwards exhibited while robbing the Holiday Inn hotel, a robbery for which Edwards also used his mother Tammy's car to commit, Detective Dickhaus testified, "He spoke with the clerk. He maintained his hand inside his pocket, implying as if he had a weapon, but he never ever displayed a weapon" to the clerk.

{¶ 22} This is in addition to Detective Dickhaus' testimony regarding the close proximity he had to Edwards during his nearly 90-minute interview with Edwards in 2016. As Detective Dickhaus testified, "Oh, we were inside of his family room, at his residence. He was on a couch. There was a table between us and I was on another couch, so relatively close." Detective Dickhaus also testified regarding his interview of Edwards as follows:

Q: During the time that you interviewed Mr. Edwards, did you have an opportunity to observe his mannerisms?

A: Yes, sir.

Q: Did you have an opportunity to hear his voice?

A: Yes, sir.

Q: Did you have any difficulty hearing him or understanding him during the time that you were interviewing him?

A: No, sir.

Q: Did you identify any characteristics of his voice during the time that you were speaking to him?

A: Yes.

Q: And, what were those?

A: He is, throughout our conversations, he was polite, he spoke kind of in a lower tone, almost like a rasping sounding to his voice.

{¶ 23} Detective Dickhaus further testified regarding another opportunity he had to hear Edwards speak; the 2016 court proceedings that resulted in Edwards' robbery conviction. Specifically, as Detective Dickhaus testified regarding those proceedings:

Q: And, approximately how long did Mr. Edwards speak during the time that you were present during the court proceedings?

A: Several minutes he spoke to the Court.

Q: And, when you say several minutes, how long?

A: You know, maybe four to five minutes. He gave a statement and then the Judge asked—maybe asked a question or something, which he would've responded.

Q: Okay. During the court proceeding, how close were you to Mr. Edwards?

A: Fairly close. He spoke from the defense side of the courtroom and I would've been on the prosecution. It's a similar set up to this, to a room like this.

* * *

Q: Did you have any difficulty hearing or understanding him during that time?

A: No, sir.

Detective Dickhaus additionally testified that, during these court proceedings, Edwards exhibited the same speech characteristics and mannerisms that he had during the earlier interview.

{¶ 24} Detective Dickhaus then testified regarding his contact with Officer Clevenger

- 11 -

and his meeting with Officer Clevenger at the Springboro Police Department. This included Detective Dickhaus' testimony about why he found Edwards' behavior during the Holiday Inn robbery so similar to the perpetrator of the Quality Inn robbery in the present case. As Detective Dickhaus testified regarding the similarities between those two robberies:

> The behavior of the suspect. Never actually showing a weapon what was similar to something of the case that I worked. The way he spoke to the clerk, I don't know if polite is the right term, but almost polite, and he is demanding, but he's not screaming, not cursing, anything like that. He's very direct and to the point with the clerk.

{¶ 25} Detective Dickhaus next testified regarding his initial review of the surveillance footage of the Quality Inn robbery at the Springboro Police Department and later again at the Florence Police Department. For instance, as Detective Dickhaus testified when asked what he did after viewing the surveillance footage of the Quality Inn robbery at the Springboro Police Department:

> A: [Officer] Clevenger provided me with a copy of the video for myself. I responded back, or returned back to the Florence Police Department and reviewed my case files and went back to this Holiday Inn robbery.
>
> Q: Okay. Did you still have a copy of your interview with [Edwards] from 2016?
>
> A: Yes, sir, I did.
>
> Q: Did you review that, listen to that interview, after [Officer] Clevenger had given you a copy of the Springboro case?
>
> Yes, sir.
>
> Q: And, did that recording refresh your memories, in terms of who the suspect was?
>
> A: Yes, sir.
>
> Q: Did you also going back and looking at that case, review those facts and circumstances surrounding that case?
>
> A: Yes, sir, I did.

- 12 -

Q: Based upon your knowledge of Mr. Edwards and the circumstances of the 2016 Holiday Inn robbery, were you able to identify the perpetrator in the 2020 Springboro Quality [Inn] robbery?

A: Yes, sir.

Q: And who is that?

A: [Edwards].

{¶ 26} Edwards' defense counsel then briefly cross-examined Detective Dickhaus. Defense counsel asked Detective Dickhaus a series of questions regarding the outcome of a motion to suppress Edwards had filed in Boone County, Kentucky related to the interview Detective Dickhaus had conducted with Edwards in 2016. Following this questioning, the state then began its re-direct examination of Detective Dickhaus by asking, "Detective Dickhaus, I'm handing you a copy of the Judgment Entry in your case, right?" Detective Dickhaus responded, "Yes, sir." The following then transpired:

Q: In that the jury in Kentucky convicted [Edwards] of the robbery –

[DEFENSE COUNSEL]: Objection.

THE COURT: Approach.

{¶ 27} The following discussion then occurred outside the hearing of the jury.

THE COURT: What is this for? We've been trying to so delicately dance around this whole issue. There are other facts very specifically with a purpose.

[THE STATE]: Defense counsel is trying to –

THE COURT: No, defense counsel has a very small window and it had to do with the suppression and the statements that Mr. Edwards made in the prior [case]. I have continuously said it, it's not what he said that we'll use here, it's the voice inflection, the mannerisms, it's his voice that's being—it's different. But, I think to use that, but that's improper.

[THE STATE]: I'll withdraw it.

- 13 -

{¶ 28} Edwards' then again objected and moved the trial court for a mistrial, which the trial court ultimately denied. The state then rested and, after hearing video recorded testimony from one defense witness, so did Edwards. The trial court then addressed the parties' exhibits, provided the jury with its final jury instructions, and excused the jury from the courtroom to begin its deliberations. The trial court's final instructions to the jury included, for the third time, an instruction on "other-acts" evidence. Specifically, an instruction to the jury that:

> Evidence was received about the commission of acts other than the offenses with which the defendant is charged with in this trial. The evidence was received only for the limited purpose of proving identity and/or modus operandi. You may consider evidence of other acts to determine whether such evidence proves the defendant's identity. You may also consider the evidence of modus operandi to determine whether the evidence proves identity.

{¶ 29} This is in addition to the trial court instructing the jury that:

> The evidence about the commission of acts other than the offenses with which the defendant is charged in this trial, cannot be considered for any other purpose, [other] than the purposes identified above. It is not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character. It does not follow from the defendant's past acts that he committed the particular crimes charged in this case.

*The Jury's Guilty Verdicts and the Trial Court's Sentencing Decision*

{¶ 30} On September 20, 2022, after deliberating for approximately three hours, the jury returned verdicts finding Edwards guilty of both charged offenses: one count of second-degree felony robbery and one count first-degree misdemeanor petty theft. Upon the jury rendering its verdict, the trial court then excused the jury from the courtroom and scheduled the matter for sentencing. Six weeks later, on November 4, 2022, the trial court held a sentencing hearing where it sentenced Edwards to serve an indefinite period of a minimum

three years in prison with a maximum possible period of four-and-one-half years in prison, less 51 days of jail-time credit. The trial court also ordered Edwards to pay $200 in restitution to Quality Inn and notified Edwards that he would be subject to a mandatory period of up to three years postrelease control, but not less than 18 months, upon his release from prison. Edwards filed a notice appealing his conviction on November 21, 2022. Oral argument was held before this court on June 20, 2023. Edwards appeal now properly before this court for decision, Edwards has raised four assignments of error for review.

**Assignment of Error No. 1:**

{¶ 31} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED EDWARDS' MOTION IN LIMINE CONCERNING THE VOICE COMPARISON/IDENTIFICATION OF EDWARDS.

{¶ 32} In his first assignment of error, Edwards argues the trial court erred by denying his motion in limine, thereby allowing the state to introduce "voice identification evidence" at trial through Detective Dickhaus' testimony identifying him as the perpetrator of the Quality Inn robbery. We disagree.

*Admission or Exclusion of Evidence Standard of Review*

{¶ 33} "A motion in limine is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 37, citing *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). That is to say, a motion in limine refers to an "evidentiary issue that is anticipated, but has not yet been presented in full context" at trial. That is why "[a] trial court's ruling on a motion in limine does not preserve the record on appeal." *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 48. "A complaining party properly preserves asserted error from a trial court's anticipatory order in limine when such party raises the evidentiary issue by timely objecting on the record at the place in the

trial that the foundation and context for admissibility has been developed." *State v. Gibson*, 12th Dist. Butler No. CA2016-06-107, 2017-Ohio-877, ¶ 20, citing *State v. Johnson*, 12th Dist. Butler No. CA86-04-060, 1987 Ohio App. LEXIS 7714, *8 (June 29, 1987). Edwards did that in this case. Therefore, rather than reviewing the trial court's decision to deny Edwards' motion in limine, we are instead reviewing the trial court's decision overruling Edwards' objection to the admission of the disputed "voice identification evidence" at trial. *Id.*, citing *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 29.

{¶ 34} "The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court." *State v. Singh*, 12th Dist. Butler No. CA2021-12-158, 2022-Ohio-3385, ¶ 31. "We review a trial court's decision to admit or exclude evidence for an abuse of [that] discretion." *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 21. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Grindstaff*, 12th Dist. Clermont No. CA2013-09-074, 2014-Ohio-2581, ¶ 21. Most cases in which an abuse of discretion is asserted are claims that the trial court's decision was unreasonable. *State v. Cast*, 12th Dist. Butler No. CA2021-09-107, 2022-Ohio-3967, ¶ 7. "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *State v. Williams*, 12th Dist. Clinton No. CA2020-10-015, 2021-Ohio-2717, ¶ 11. Therefore, absent an abuse of discretion that has resulted in material prejudice, this court will not reverse a trial court's evidentiary decisions regarding the admission or exclusion of evidence at trial. *State v. Geddes*, 12th Dist. Fayette No. CA2021-01-001, 2021-Ohio-4115, ¶ 12.

*Edwards' Arguments and Analysis*

**{¶ 35}** As noted above, Edwards argues the trial court erred by allowing Detective Dickhaus to testify and opine that Edwards was the perpetrator of the Quality Inn robbery. To support this claim, Edwards initially argues it was error for the trial court to admit Detective Dickhaus' testimony identifying him as the perpetrator of the Quality Inn robbery because the state failed to satisfy, as a condition precedent to admissibility, the authentication and voice identification requirements set forth under Evid.R. 901(B)(5). This argument lacks merit.

**{¶ 36}** Pursuant to Evid.R. 901(B)(5), the requirement of authentication or identification as a condition precedent to admissibility may be satisfied by voice identification. *State v. Jackson*, 12th Dist. Fayette No. CA2011-01-001, 2011-Ohio-5593, ¶ 15. Specifically, Evid.R. 901(B)(5) provides that identification of a voice can be authenticated "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Evid.R. 901(B)(5) provides that this identification can occur regardless of whether the voice is heard "firsthand or though mechanical or electronic transmission or recording." This presents a low standard of admissibility. *State v. Hernandez,* 5th Dist. Richland No. 2021 CA 0046, 2022-Ohio-3011, ¶ 43. So low, in fact, that the "witness identifying a person's voice does not [even] have to be an expert in voice recognition." *State v. Buck*, 1st Dist. Hamilton No. C-160320, 2017-Ohio-8242, ¶ 52. For example, where:

> X receives a telephone call purportedly from Y. If the telephone call is to be accepted as evidence in a trial, X may "authenticate" or "identify" the voice of Y by preliminarily testifying that he is familiar with the voice of Y as a result of previous conversations with Y.

Evid.R. 901(B)(5), Staff Notes.

**{¶ 37}** Edwards claims it was error for the trial court to find the state had satisfied the

requirements of Evid.R. 901(B)(5) because Detective Dickhaus was "not familiar" with his voice. However, as the record indicates, this is simply not the case. The record instead establishes that Detective Dickhaus was intimately familiar with Edwards' voice, including Edwards' voice inflection and mannerisms while speaking, because of having interviewed Edwards several years earlier, in 2016, about a robbery that had taken place at a Holiday Inn located in Kentucky. This interview, which lasted for nearly an hour and a half, took place in Edwards' family room while both Edwards and Detective Dickhaus sat relatively close across a table from one another on opposite couches. This is in addition to Detective Dickhaus having the opportunity to hear Edwards speak for an additional four to five minutes during the subsequent court proceedings that resulted in Edwards' conviction for robbing that Holiday Inn hotel. Detective Dickhaus testified that he had no trouble either hearing or understanding Edwards during either of the two times he heard Edwards speak. Detective Dickhaus testified that this was true even though Edwards "spoke kind of in a lower tone" with a "rasping" sound to his voice. Therefore, because the record establishes that Detective Dickhaus was intimately familiar with Edwards' voice, Edwards' claim that it was error for the trial court to find the state had satisfied the requirements of Evid.R. 901(B)(5) because Detective Dickhaus was "not familiar" with his voice lacks merit.

{¶ 38} Edwards also claims it was error for the trial court to find the state had satisfied the requirements of Evid.R. 901(B)(5) because Detective Dickhaus did not immediately identify the perpetrator's voice captured on the surveillance footage taken of the Quality Inn robbery as his. However, although it may be true that Detective Dickhaus did not immediately identify the perpetrator's voice as Edwards, there is nothing within the language of Evid.R. 901(B)(5) that requires the voice identification to be made immediately upon hearing the voice in question. There is, in fact, no time limit set forth within Evid.R. 901(B)(5) for when that voice identification can occur. That is not to say a delay in identifying a

particular voice lacks all meaning. Far from it. A delay in the voice identification may certainly be relevant to the weight, if any, the trier of fact should give to the identification being made. *See State v. Hutson*, 11th Dist. Portage No. 2007-P-0026, 2008-Ohio-2315, ¶17 ("once the trial court determined sufficient evidence was presented to comply with the admissibility requirements of Evid.R. 901[B][5], the sufficiency of such testimony to verify the identity of the defendant is a matter to be weighed by the trier of fact"). Therefore, because Detective Dickhaus' inability to immediately identify the perpetrator's voice captured on the surveillance footage taken of the Quality Inn robbery goes to the weight of the evidence rather than to its admissibility, Edwards' claim that it was error for the trial court to find the state had satisfied the requirements of Evid.R. 901(B)(5) even though Detective Dickhaus had not immediately identified his voice as that of the perpetrator of the Quality Inn robbery also lacks merit.

{¶ 39} Edwards next argues the trial court erred by allowing Detective Dickhaus to testify and opine that it was Edward's voice that could be heard on the surveillance footage of the Quality Inn robbery because the "voice comparison" that Detective Dickhaus' conducted between that footage and the audio recording of his 2016 interview with Edwards was "unduly suggestive and unreliable." To support this claim, Edwards points to Officer Clevenger's testimony elicited at the hearing on his motion in limine that he had requested Detective Dickhaus' assistance to identify the voice of a "suspect in his case," as well as the underlying facts that led Officer Clevenger to seek out Detective Dickhaus' help in identifying the perpetrator of the Quality Inn robbery. Edwards also notes the fact that, in Officer Clevenger's original attempts to obtain a voice comparison between the surveillance footage taken of the Quality Inn robbery and the audio recording of Detective Dickhaus' interview with Edwards, an agent with the FBI informed him that "voice comparisons are extremely unreliable if a person is wearing a mask." This is in addition to Edwards noting

that Detective Dickhaus "is not an expert, nor trained in voice comparison, and no expert comparison was conducted in this case," thus making the trial court's decision to exclude the audio recording of his 2016 interview with Detective Dickhaus from evidence improper and compromised his right to a fair trial.

{¶ 40} We are unconvinced by Edwards' shotgun approach to advocacy given the general inaccuracies with which Edwards supports his assertions. This includes, most notably, Edwards' unfounded, borderline conspiratorial, theories behind Officer Clevenger's and Detective Dickhaus' meeting at the Springboro Police Department. Given these inaccuracies, we find it necessary to call Edwards' attention back to Officer Clevenger's testimony regarding the extensive steps he took to avoid compromising the integrity of his investigation into the Quality Inn robbery. Officer Clevenger went out of his way to ensure that he was not in Detective Dickhaus' line of sight while Detective Dickhaus first watched the surveillance footage taken of the Quality Inn robbery. We also find it necessary to refer Edwards back to why the audio recording of his 2016 interview with Detective Dickhaus was not admitted into evidence. That being, as explained by the state, the trial court not wanting the jury to "listen to an hour and a half of Mr. Edwards discussing multiple offenses that are unrelated to the case and including additional offenses that are not the ones that Detective Dickhaus testified about," sentiments that Edwards' trial counsel expressly agreed with. Therefore, because there is nothing in the record, either factually or legally, to support Edwards' argument alleging the "voice comparison" conducted by Detective Dickhaus in this case was "unduly suggestive and unreliable," the trial court did not err by allowing Detective Dickhaus to testify and opine that it was Edward's voice that could be heard on the surveillance footage of the Quality Inn robbery.

{¶ 41} Edwards lastly argues the trial court erred by allowing Detective Dickhaus to testify and opine that it was Edward's voice that could be heard on the surveillance footage

of the Quality Inn robbery because the statements he made during his interview with Detective Dickhaus in 2016 were suppressed on Fifth Amendment grounds by a Boone County, Kentucky court upon finding Edwards had invoked his right to remain silent during that interview, and that any further questioning of Edwards after that invocation had violated Edwards' rights provided to him under *Miranda*. This is because, according to Edwards, the suppression "not only pertained to the content of his statements, but also to the substance of his statements, including his voice," thereby rendering the sound of his voice a fruit of that poisonous tree. We disagree.

{¶ 42} As explained by the trial court when limiting the breadth of Edwards' questioning Officer Clevenger related to the Boone County, Kentucky court's ruling on his motion to suppress:

> I understand what you're saying, but the problem is that the interview isn't being used for the substance of what he said. That's not why you use it * * *. Again, it's not the substance of the statement, it's the—I don't even know how to describe it, it's the actual voice of the defendant.

We agree with the trial court in this case. In so holding, we note that "[t]he Fifth Amendment protects individuals against compelled self-incrimination." *State v. Hoop*, 134 Ohio App.3d 627, 638 (12th Dist.1999). That is to say, the Fifth Amendment protects an accused only from being compelled to testify against himself or herself, or otherwise provide the state with evidence of a testimonial or communicative nature. *Schmerber v. California*, 384 U.S. 757, 761, 86 S. Ct. 1826 (1966).

{¶ 43} "In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341 (1988). It is only then that the accused is actually being compelled to be a "witness" against himself or herself. *Pennsylvania v. Muniz*, 496 U.S. 582, 589, 110 S.Ct. 2638 (1990). It necessarily follows that, in Ohio, "the demonstration of

physical attributes such as scars, fingerprints, tattoos, eyes and teeth have been held to be nontestimonial." *State v. Cooley*, 6th Dist. Lucas Nos. L-02-1175 thru L-02-1177, 2004 Ohio App. LEXIS 2447, *4 (May 28, 2004). The sound of the accused's voice falls into that same category of nontestimonial physical attributes, "the compelled demonstration of which infringes no interest protected by the privilege against compulsory self-incrimination." *United States v. Williams*, 704 F.2d 315, 317-318 (6th Cir.1983), citing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926 (1967); and *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764 (1973). Therefore, finding no merit to any of the argument made by Edwards' herein, Edwards' first assignment of error is overruled.

**Assignment of Error No. 2:**

{¶ 44} THE TRIAL COURT ERRED WHEN IT PERMITTED INADMISSIBLE 404(B) EVIDENCE TO IDENTIFY EDWARDS AS THE PERPETRATOR.

{¶ 45} In his second assignment of error, Edwards argues the trial court erred by admitting at trial certain "other-acts" evidence the state used to identify him as the perpetrator of the Quality Inn robbery under Evid.R. 404(B). More specifically, Edwards argues it was error for the trial court to admit evidence that he had been convicted of robbing a Holiday Inn hotel located in Boone County, Kentucky, in 2016. We disagree.

*Standard of Review for Admission of "Other-Acts" Evidence*

{¶ 46} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit [a] crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. That is why, "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, ¶ 36. Specifically, pursuant to Evid.R. 404(B)(1),

"[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, under Evid.R. 404(B)(2), such evidence may be admissible for another purpose. *State v. Schmidt*, 12th Dist. Warren No. CA2021-12-115, 2022-Ohio-4138, ¶ 29. This includes, but is not limited to, "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." *State v. Smith*, 12th Dist. Clermont No. CA2019-10-075, 2020-Ohio-4008, ¶ 50. "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22.

{¶ 47} "Courts are precluded from admitting improper character evidence under Evid.R. 404(B), but have discretion to allow other-acts evidence that is admissible for a permissible purpose." *State v. Lewis*, 9th Dist. Summit No. 29696, 2021-Ohio-1575, ¶ 9, citing *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 72. A mixed standard of review therefore applies when reviewing a trial court's decision to admit or exclude other-acts evidence at trial pursuant Evid.R. 404(B). *State v. Gawron*, 7th Dist. Belmont No. 20 BE 0009, 2021-Ohio-3634, ¶ 40. That is to say, "[a] de novo standard applies when determining whether the other-acts evidence was offered for a permissible, non-propensity-based purpose, whereas an abuse of discretion standard applies when determining whether the trial court erred in the exercise of its judgment by admitting the other-act evidence for that purpose." *State v. Hall*, 12th Dist. Warren No. CA2020-12-087, 2022-Ohio-1147, ¶ 193. "While a de novo review requires this court to review the matter anew, an abuse of discretion standard requires us to determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Baker*, 12th Dist. Butler No. CA2020-08-086, 2021-Ohio-272, ¶ 27 citing *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

- 23 -

*Three-Part Analysis for Admission of "Other-Acts" Evidence Under Evid.R. 404(B)*

**{¶ 48}** A three-part analysis must be applied when considering the admission of other-acts evidence under Evid.R. 404(B). *State v. Ruggles*, 12th Dist. Warren Nos. CA2019-05-038 and CA2019-05-44 thru CA2019-05-046, 2020-Ohio-2886, ¶ 62. Under that three-part analysis, to be admissible: (1) the evidence must be relevant under Evid.R. 401; (2) the evidence must be introduced for a purpose other than proving propensity like those permitted purposes set forth under Evid.R. 404(B)(2); and (3) the evidence's probative value must not be substantially outweighed by the risk of unfair prejudice under Evid.R. 403(A). *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 126; *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 17. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Tunstall*, 12th Dist. Butler No. CA2019-06-090, 2020-Ohio-5124, ¶ 34, quoting Evid.R. 401. "[T]he problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant." *Smith*, 2020-Ohio-4441 at ¶ 37. This is why, "[i]n the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *Id.* "Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case." *Id.* at ¶ 38.

*Edwards' Arguments and Analysis*

**{¶ 49}** Edwards initially argues the trial court erred by admitting "other-acts" evidence that he had robbed a Holiday Inn in Boone County, Kentucky several years earlier, in 2016, because that evidence was not relevant in that it "fails to demonstrate the requisite *modus operandi* to establish identity." This argument lacks merit.

{¶ 50} "Other acts can be evidence of identity in two situations." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 88, citing *State v. Lowe*, 69 Ohio St.3d 527, 531 (1994). "First are those situations where other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are 'inextricably related to the alleged criminal act.'" *Lowe*, quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). "Other acts may also prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged. 'Other acts forming a unique identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).'" (Emphasis sic.) *Id.*, quoting *State v. Jamison*, 49 Ohio St.3d 182 (1990), syllabus. "'Modus operandi' literally means method of working." *Hartman*, 2020-Ohio-4440 at ¶ 37. Modus operandi evidence is evidence of "signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.'" *Id.*, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019). "Slight differences between the current and other acts will not affect the admissibility of the other-acts evidence as long as it establishes 'a *modus operandi* identifiable with the defendant.'" (Emphasis sic.) *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, ¶ 119, quoting *Lowe*. Those slight differences are instead matters for the trier of fact to consider when determining the weight that otherwise admissible "other-acts" evidence should receive. *See State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 109, citing *Jamison* at 187.

{¶ 51} After a thorough review of the record, we find no error in the trial court's decision to admit the "other-acts" evidence at issue in this case. That being, the evidence that Edwards had previously been convicted of robbing a Holiday Inn hotel located in Boone County, Kentucky in 2016. This is because, although not identical, the facts underlying Edwards' robbery of the Holiday Inn hotel share many key similarities to the robbery of the Quality Inn hotel at issue in this case. This holds true even though the two robberies were

committed in different states and some four years apart. *See, generally, State v. Powers*, 12th Dist. Clinton No. CA2006-01-002, 2006-Ohio-6547, ¶ 17 (finding "other-acts" evidence was properly admitted where, although happening 12 years before the crimes for which appellant was then being tried, nevertheless "shared common features" and "were similar in pattern and opportunity").

{¶ 52} For example, both robberies involved hotels; both robberies were perpetrated by a Black male with the same substantially similar physical features; and both robberies were effectuated without the perpetrator ever brandishing a weapon, but rather by the perpetrator, with his hands in his pockets, demanding money from the hotel's front desk clerk in a firm, yet somewhat polite manner. This is in addition to both robberies being perpetrated by a person who spoke in a lower tone with a raspy sound to his voice using a car belonging to Edwards' mother, Tammy. Therefore, because the "other-acts" evidence at issue in this case was both relevant and admissible to prove Edwards' identity as the perpetrator of the Quality Inn robbery, the trial court's decision to admit "other-acts" evidence that Edwards had robbed a Holiday Inn hotel in Boone County, Kentucky in 2016 was not error. Accordingly, Edwards' first argument lacks merit.

{¶ 53} Edwards also argues the trial court erred by admitting "other-acts" evidence because the probative value of that evidence was "minimal at best" and far outweighed by its "great" prejudicial effect. We disagree. In so holding, we note that the prejudicial impact that may have arisen by the admission of such "other-acts" evidence, if any, was minimized by the trial court instructing the jury on three separate occasions that it could only consider this evidence for the limited purpose of proving Edwards' identity as the perpetrator who committed the Quality Inn robbery. *See, e.g., State v. Green*, 12th Dist. Clermont No. CA2019-07-061, 2020-Ohio-1552, ¶ 32 (finding the probative value of "other-acts" evidence was not substantially outweighed by the danger of unfair prejudice where the trial court gave

two limiting instructions to the jury regarding the "other-acts" evidence at issue).

{¶ 54} Absent evidence to the contrary, we must presume that the jury followed the trial court's instruction each of the three times it was given. *See, e.g., State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 16 ("[t]he prejudicial impact of the other robberies evidence was minimized because the trial court twice instructed the jury that it could consider [a detective's] testimony about the other robberies only on the disputed issue of appellant's identity as one of the * * * robbers," an instruction that, absent evidence to the contrary, we must presume the jury followed). Therefore, because the "other-acts" evidence at issue was not unduly prejudicial, particularly when considering the trial court instructed the jury on three separate occasions that such evidence could not be considered to show that Edwards had acted in conformity with bad character, Edwards' second argument also lacks merit. Accordingly, finding no merit to either of the two arguments advanced by Edwards herein, Edwards' second assignment of error is overruled.

**Assignment of Error No. 3:**

{¶ 55} EDWARDS' CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE NOR THE WEIGHT OF THE EVIDENCE.

{¶ 56} In his third assignment of error, Edwards argues the jury's verdicts finding him guilty of both the robbery and petty theft offenses were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

*Sufficiency and Manifest Weight of the Evidence Standard of Review*

{¶ 57} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). To that end, "[w]hen reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court

examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. In so doing, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "This test 'requires a determination as to whether the state has met its burden of production at trial.'" *State v. Thompson*, 12th Dist. Butler No. CA2022-09-080, 2023-Ohio-559, ¶ 34, quoting *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.

{¶ 58} On the other hand, "a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26. That is to say, "[a] manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *State v. Dean*, 12th Dist. Madison Nos. CA2021-08-013 and CA2021-08-014, 2022-Ohio-3105, ¶ 62, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When determining whether a jury's verdict is against the manifest weight of the evidence, this court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses," and "determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. Applying this standard requires this court to function as a "thirteenth juror." *State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. However, although acting as a "thirteenth

juror," this court will overturn a conviction for being against the manifest weight of the evidence only in extraordinary circumstances where the evidence weighs heavily in favor of acquittal. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10, citing *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

*Edwards' First Argument and Analysis*

{¶ 59} Initially, Edwards argues the jury's verdicts finding him guilty of second-degree felony robbery in violation of R.C. 2911.02(A)(2) and first-degree misdemeanor petty theft in violation of R.C. 2913.02(A)(4) were not supported by sufficient evidence and were against the manifest weight of the evidence because the state failed to prove that he was the perpetrator who had committed the Quality Inn robbery at issue. This argument lacks merit.

{¶ 60} It is well established that, "[i]n order to warrant a conviction, the evidence presented must establish beyond a reasonable doubt the identity of the accused as the person who actually committed the crime." *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 12. That is to say, "[e]very criminal prosecution requires proof that the person accused of the crime is the person who committed the crime." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 15. "This truism is reflected in the state's constitutional burden to prove the guilt of 'the accused' beyond a reasonable doubt." *Id.*, citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970). This necessarily means the jury's verdict identifying the defendant as the perpetrator who committed the crime must be supported by sufficient evidence. *See State v. Helvey*, 12th Dist. Butler No. CA2021-01-008, 2022-Ohio-98, ¶ 19 ("[t]he state is required to prove a perpetrator's identity beyond a reasonable doubt"), citing *State v. Cook*, 65 Ohio St.3d 516, 526 (1992). This also means the jury's verdict identifying the defendant as the perpetrator must not be against the manifest weight of the evidence. *See, e.g., State v. Raleigh*, 12th Dist. Clermont Nos.

CA2009-08-046 and CA2009-08-047, 2010-Ohio-2966, ¶ 44-51 (jury's verdict identifying appellant as the perpetrator of a burglary was not against the manifest weight of the evidence where the evidence established "that appellant was the man [who was] witnessed entering the [victim's] home, and that appellant's actions at the [victim's] home constituted a burglary").

{¶ 61} Edwards argues his conviction was not supported by sufficient evidence and against the manifest weight of the evidence because there was only a "generic description" given of the perpetrator, the front desk clerk at the time of the robbery, Soundararajan, did not testify at trial, and "no law enforcement officers could physically identify the suspect." Edwards also argues his conviction was not supported by sufficient evidence because no other "potential witnesses were interviewed," no DNA, nor fingerprint evidence was collected, and no search warrant was executed on either his residence or on his mother Tammy's vehicle he was alleged to have used to commit the robbery. Edwards further argues that his conviction was not supported by sufficient evidence because, although his cell phone records indicated he was in the general vicinity of the Quality Inn at the time of the robbery, "there was no evidence that his cell phone pinged in Springboro, only I-75." This is in addition to Edwards again arguing that the "the admission of *modus operandi* evidence involving a prior offense of robbery to prove his identity proved to be irrelevant and highly prejudicial," and that the "voice comparison" conducted by Detective Dickhaus between the perpetrator's voice captured on the surveillance footage of the Quality Inn robbery and the audio recording of the interview Detective Dickhaus conducted on him in 2016 was "extremely unreliable" and an "inherently suggestive process was used to obtain it."

{¶ 62} Admittedly, Edwards does make some points as it relates the areas in which the state's evidence against him was lacking. This is particularly true as it relates to the

absence of eyewitness testimony, or forensic evidence, directly linking Edwards to the Quality Inn robbery. However, like any fact, the state is not limited to proving the identity of the perpetrator to direct evidence. *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-02-002, 2021-Ohio-3781, ¶ 41. The state can also prove the identity of the perpetrator by circumstantial evidence. *State v. Teitelbaum*, 10th Dist. Franklin No. 14AP-310, 216-Ohio-3524, ¶ 120. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. "More specifically, '[c]ircumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind.'" *State v. Mendonca*, 12th Dist. Brown No. CA2022-08-007, 2023-Ohio-1780, ¶ 26, quoting *Stringer*. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶ 63} The evidence in this case, albeit circumstantial, was more than enough for the jury to find Edwards was the perpetrator of the Quality Inn robbery beyond a reasonable doubt. This includes, but is not limited to, the evidence indicating the perpetrator of the Quality Inn robbery had many of Edwards' same physical features. These similarities were not limited to just race, gender, height, and weight, but also, as Detective Dickhaus testified, to parallel speech characteristics and voice mannerisms. This also includes the evidence obtained from Edwards' cell phone records, which indicated Edwards was in the general vicinity of the Quality Inn immediately before and after the robbery took place. This is in addition to the evidence indicating the perpetrator of the Quality Inn robbery had used a car

belonging to Edwards' mother, Tammy, to commit the robbery, something Edwards had also done several years earlier, in 2016, when he robbed a Holiday Inn hotel located in Boone County, Kentucky.

**{¶ 64}** The evidence further indicated that the way in which Edwards had robbed that Holiday Inn hotel was nearly identical to how the perpetrator had robbed the Quality Inn hotel at issue in this case. The jury, taking all this evidence into consideration, and applying its logic and common sense, determined that Edwards was the perpetrator of the Quality Inn robbery. This was not an error. This is because, despite what Edwards seems to suggest, "[t]here is no requirement that an accused must be identified as the perpetrator by a witness testifying in court or during a photo lineup." *State v. Hibbard*, 12th Dist. Butler No. CA2022-09-086, 2023-Ohio-983, ¶ 20. Therefore, because the jury's verdict finding Edwards was the perpetrator of the Quality Inn robbery was supported by sufficient evidence and not against the manifest weight of the evidence, Edwards' first argument lacks merit.

*Edwards' Second Argument and Analysis*

**{¶ 65}** Next, Edwards argues the jury's verdicts finding him guilty were not supported by sufficient evidence and were against the manifest weight of the evidence because the state failed to prove that he "conveyed an implied threat to inflict physical harm" to Soundararajan, the clerk working at the Quality Inn hotel's front desk at the time of the robbery. This argument also lacks merit.

**{¶ 66}** Based on the facts of this case, to secure a conviction against Edwards for second-degree felony robbery in violation of R.C. 2911.02(A)(2), the state was required to prove Edwards, in his efforts to rob the Quality Inn hotel at issue, either inflicted, attempted to inflict, or threatened to inflict physical harm on the clerk working at the hotel's front desk

at the time of the robbery, Soundararajan.[3]  Similarly, to secure a conviction against Edwards for first-degree misdemeanor petty theft in violation of R.C. 2913.02(A)(4), the state was required to prove Edwards, with purpose to deprive the Quality Inn of its money, knowingly obtained control of the Quality Inn's money by threat.  Edwards argues the state failed to prove that he, assuming he was the perpetrator of the Quality Inn robbery, ever threatened Soundararajan with physical harm or that he ever "threatened the clerk at all."

{¶ 67} To support this claim, Edwards notes that the surveillance footage taken of the Quality Inn robbery "failed to show that the suspect displayed, brandished, indicated possession, or used a weapon to threaten the clerk with physical harm to get her to comply with his command to give him money."  Edwards also notes that both Officer Clevenger and Detective Dickhaus "admitted at trial that the suspect did not make any movements with his hands while in his pockets."  This is in addition to Edwards claiming that "there was no evidence presented to demonstrate that the suspect instilled fear or panic into the clerk to make her comply with his request to give him the money."  Therefore, rather than a threat, Edwards argues the evidence instead "revealed that the suspect used his words to let the clerk know what there was no threat at all when he told the clerk, 'Don't be afraid.  Just give me the money[, that's all I want.]"  The jury disagreed and so do we.

{¶ 68} "[I]t is well settled that a threat does not have to be express, but instead, may be implied." *State v. Elsberry*, 12th Dist. Butler No. CA2011-12-221, 2013-Ohio-1378, ¶ 30. It is equally well settled that written or verbal demands for money carry an implicit threat; if the money is not produced, physical harm may result.  *State v. Eckert*, 12th Dist. Clermont No. CA2008-10-099, 2009-Ohio-3312, ¶ 11.  This holds true even in circumstances where, as in this case, the perpetrator neither verbally nor by some overt act indicates that he or

___

3. R.C. 2901.01(A)(3) defines "physical harm to persons" to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

she has a weapon. *Id.* at ¶ 12. Given these principles, we find it clear that Edwards' conduct during the Quality Inn robbery, while not explicit, undoubtedly conveyed an implied threat to Soundararajan that he would inflict physical harm upon her if she failed to comply with his repeated demands for money. To hold otherwise would effectively render Edwards' demands that Soundararajan "hurry up" and give him the money "right now" meaningless.

{¶ 69} This is particularly true in this case when considering Edwards also told Soundararajan, "If you don't do it, it's not worth it," thereby implying he would cause Soundararajan physical harm if she did not immediately do as he said and hand the money over to him. That Edwards also told Soundararajan, "Don't be afraid. Just give me the money, that's all I want," does not negate this fact for even those seemingly innocuous comments convey an implied threat of physical harm to Soundararajan if his demands for money were not met. Therefore, because the jury's verdict finding Edwards had conveyed an implied threat of physical harm to Soundararajan was supported by sufficient evidence and not against the manifest weight of the evidence, Edwards' second argument also lacks merit. Accordingly, finding no merit to either of the two arguments advanced by Edwards herein, Edwards' third assignment of error is overruled.

**Assignment of Error No. 4:**

{¶ 70} THE TRIAL COURT ABUSED ITS DISCRETION BY NOT DECLARING A MISTRIAL.

{¶ 71} In his fourth assignment of error, Edwards argues the trial court erred by denying his motion for a mistrial. We disagree.

*Motion for a Mistrial Standard of Review*

{¶ 72} A trial court's decision to grant or deny a mistrial rests within the sound distraction of the trial court. *State v. King*, 12th Dist. Clermont No. CA2022-01-001, 2022-Ohio-3388, ¶ 29. "To that end, this court will not disturb a trial court's decision to grant or

deny a mistrial absent an abuse of that discretion." *Hall*, 2022-Ohio-1147 at ¶ 184. As noted above, "[a]n abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Motz*, 12th Dist. Warren No. CA2009-10-137, 2010-Ohio-2170, ¶ 12, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7.

{¶ 73} When reviewing a trial court's decision either granting or denying a motion for a mistrial, this court should examine the "climate and conduct of the entire trial" and "grant 'great deference to the trial court's discretion * * * in recognition of the fact that the trial judge is in the best position to determine whether the situation in [the judge's] courtroom warrants the declaration of a mistrial.'" *State v. Jackson*, 12th Dist. Madison No. CA2019-03-006, 2020-Ohio-2677, ¶ 31, quoting *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). This occurs in circumstances where "it appears that some error or irregularity has been injected into the proceeding that adversely affects the substantial rights of the accused, and as a result, a fair trial is no longer possible." *State v. Thornton*, 12th Dist. Clermont No. CA2008-10-092, 2009-Ohio-3685, ¶ 11, citing *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist.1988).

*Edwards' Argument and Analysis*

{¶ 74} Edwards argues the trial court should have granted a mistrial when, on re-direct examination, the state asked Detective Dickhaus to identify a copy of the judgment entry issued in 2016 after Edwards was found guilty of robbing the previously mentioned Holiday Inn hotel located in Boone County, Kentucky. This is because, according to Edwards, asking Detective Dickhaus to identify a copy of that judgment entry was in direct violation of the trial court's earlier admonition to avoid mentioning Edwards' conviction when at all possible. However, although we agree that it was improper for the state to ask Detective Dickhaus to identify that document given the trial court's prior instructions not to

mention Edwards' 2016 conviction under these circumstances, Edwards has failed to establish how that subjected him to any resulting prejudice. This is because, as the record firmly establishes, the jury was informed that Edwards had such a conviction on his record several times and well before the re-direct examination of Detective Dickhaus occurred. This included Detective Dickhaus testifying, without objection, that Edwards had been convicted of robbing a Holiday Inn hotel located in Boone County, Kentucky, a case in which he had himself investigated in 2016. This also included Officer Clevenger testifying, again without objection, that he had contacted the Boone County Sheriff's Office seeking information on Edwards' involvement in that 2016 Holiday Inn hotel robbery because he "knew that there were some convictions there, yes."

{¶ 75} In so holding, we note that following Edwards' objection to the state asking Detective Dickhaus to identify a judgment entry of Edwards' prior 2016 robbery conviction, the trial court instructed the jury as follows:

> All right, ladies and gentlemen, I'm going to sustain the objection and I'm ordering you at this point in time, the question that was asked by the prosecuting attorney and any response, I don't think there was a response, but if there was, it is all stricken from the record [and you are ordered] to disregard it.

{¶ 76} Just as before, absent evidence to the contrary, we must presume that the jury followed the trial court's instruction and disregarded both the state's question and Detective Dickhaus' response, if any. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791, ¶ 45 ("as part of the final jury charge, the trial court specifically instructed the jury that when the court sustained an objection to a question they were to disregard any answers and not consider it as part of the evidence," an instruction that we must presume the jury followed); *State v. Raypole*, 12th Dist. Fayette No. CA2014-05-009, 2015-Ohio-827, ¶ 25 ("[w]e must presume that the jury followed the trial court's instructions and disregarded [the witness' nonresponsive answer]" upon finding "[a]ny mistake in

allowing [the witness] to make such a statement was addressed and corrected by the trial court when it gave a curative instruction to the jury"). Therefore, because Edwards cannot demonstrate any resulting prejudice based on the state's question or Detective Dickhaus' response, if any, the trial court did not err by denying Edwards' motion for a mistrial in this case. Accordingly, finding no merit to the argument advanced by Edwards herein, Edwards' fourth assignment of error is overruled.

**Conclusion**

{¶ 77} For the reasons outlined above, and finding no merit to any of the arguments raised by Edwards herein in support of his four assignments of error, Edwards' appeal challenging the jury's verdicts finding him guilty of one count second-degree felony robbery and one count of first-degree misdemeanor petty theft is denied.

{¶ 78} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.